**ORDERED.**

**Dated:  April 19, 2024**

Jacob A. Brown
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| In re:<br><br>HOLDINGS OF SOUTH FLORIDA, INC.<br><br>Debtor. | Case No. 3:24-bk-00003-JAB<br><br>Chapter 11<br>*SubChapter V* |

**ORDER CONFIRMING THE FIRST AMENDED PLAN OF REORGANIZATION**
**FOR HOLDINGS OF SOUTH FLORIDA, INC. DATED APRIL 2, 2024**

This case came before the Court at the hearing held on April 10, 2024 at 2:30pm, to

consider confirmation (the "Confirmation Hearing") of the First Amended Sub-Chapter V Plan of

Reorganization for Holdings of South Florida, Inc., dated April 2, 2024 (Doc. No. 45) (the "Plan"),

filed by Holdings of South Florida, Inc., the debtor, debtor-in-possession, and plan proponent (the

"Debtor").

Having heard the evidence proffered by counsel for the Debtor at the Confirmation

Hearing, and based upon the evidence presented showing the Court that the Plan meets all

applicable requirements for confirmation of a plan proposed under Chapter 11 of Title 11 of the

United States Code as set forth in 11 U.S.C. §§ 1191(a) and (b) it is

**ORDERED**

1.      The Plan is confirmed under 11 U.S.C. § 1190.  The Effective Date of the Plan shall

be May 3, 2024. A copy of the Plan is attached hereto as **Exhibit A**.

2.      The following modifications to the Plan as stated at the Confirmation Hearing and

contained are incorporated into this Order:

   a.  Paragraph 11.01(5) shall be amended to provide that Debtor's principal, John
    Romberg will provide a yearly contribution of $2,000 to general unsecured
    creditors;

   b.  Debtor will pay the Internal Revenue Service priority claim of $8329 as a Class
    1 Creditor with payment in full over 60 months from the Petition Date at 8%
    interest with monthly payments of $168.88;

   c.  Debtor's principal, John Romberg, will personally guarantee the Debtor's plan
    payments to the Class 6 General Unsecured Creditor Class; and,

   d.  Paragraph 11.04 shall be amended to limit the parties intended to be enjoined
    to Quick Funding Group, LLC.

3.      The Court finds that the plan was a non-consensual plan pursuant to the terms of

11U.S.C. §1191(b). The Debtor shall be the disbursing agent for any payments made to priority,

secured and unsecured creditors through the Plan.

4.      Secured creditors shall retain any lien on property in which the estate has an

interest only to the extent of the value of such a creditor's interest and the estate's interest in such

property as determined by the Confirmed Plan, this Confirmation Order, and as of the Effective

date of the Plan.  Payments to secured creditors in which the Debtor has retained the collateral

securing the claim shall be in accordance with the Confirmed Plan and this Confirmation Order.

5.      The Debtor shall pay all Subchapter V Trustee fees assessed pursuant to 11

U.S.C. §503(b) and 11 U.S.C. §1191(e) as stated below in the claims section. Any applications

for compensation by any Trustee and/or professionals employed by the Debtor shall be

filed within thirty (14) days of the date of this Order on seven (7) days negative notice. Because

this is a non-consensual plan, the Subchapter V Trustee may file additional interim applications

as appropriate until the final decree is entered.

6.      The Debtor shall file with the Bankruptcy Court post-confirmation financial

report or statement of disbursements for each quarter (or portion thereof) that this Chapter 11

case remains open, in a format prescribed by the United States Trustee.  The Debtor shall file

post-confirmation quarterly reports until this case is converted, dismissed or closed pursuant to

11 U.S.C. § 1106(a)(7) and Bankruptcy Rule 2015(a)(5). The subchapter V trustee shall monitor

Debtor's compliance with the plan and is authorized to take any appropriate action in the event

of default.

7.      This Confirmation Order supersedes any orders for adequate protection

previously entered in this case and the same shall be of no further force and effect. This

Confirmation Order imposes an affirmative duty on the holders and/or servicers of any claims

secured by liens, mortgages, and/or deeds of trust that receive payments pursuant to this Plan to

credit payments in a manner required by the Plan in accordance with 11 U.S.C. § 524(i).

8.      Any objection filed by a creditor that was not prosecuted at the Confirmation

Hearing is deemed withdrawn and/or overruled by the entry of this Confirmation Order.

9.      The Debtor shall fund the Plan for the applicable commitment period using all

disposable income, including any sums received from future tax refunds, during the applicable commitment period. The current disposable income was calculated at $590.00 per month for months 1-36 of the Plan as stated on **Exhibit A**.

10.     A schedule of payments to unsecured creditors pursuant to the Confirmed Plan and this Confirmation Order is attached and incorporated into this Confirmation Order as **Exhibit B**.  Upon completion of distributions to Class 4 (unsecured distributions) as set forth in **Exhibit B** to this Confirmation Order and the terms of the Confirmed Plan, the Debtor shall be entitled to a discharge pursuant to 11 U.S.C. § 1141.

11.     The Court reserves jurisdiction to consider any fee applications of professionals if filed within thirty (30) days of the date of this order.

12.     Confirmation of the Plan does not revest the property of the estate in the Debtor(s). Property of the estate shall revest in the Debtor(s) only upon Discharge of the case.

13.     The Court reserves jurisdiction to enforce the payment schedule to secured creditors as set forth in the Plan.

14.     Should the Debtor fail to make a payment required by the terms of the Plan, Creditors may pursue their remedies in state or federal court as to the total amount owed and unpaid pursuant to the terms of the confirmed Plan.

15.     Tax Returns. During the term of the Plan, the Debtor shall provide copies of annual income tax returns to the SubChapter V Trustee and the United States Trustee, within twenty days of the filing of such return.

16.     The Debtor(s) will not be discharged from any debt excepted from discharge under Section 523 of the Code.

17.     Third Party Bar imposed: Pursuant to Section 11 of the Confirmed Plan below,

the following provisions are in effect as to John Romberg.

**Upon Confirmation of this Plan or any Amended Plan with substantially the same language and compliance with the provisions of this Plan stated below, the Automatic Stay of 11 U.S.C. § 362(a) shall extend to John Romberg who personally guaranteed secured, unsecured or leased debt of the corporation to Quick Funding Group, LLC until such time as one of the four following termination provisions occurs: 1) the Chapter 11 case is discharged or dismissed; 2) the co-debtor leaves the employment of the corporation; 3) the plan is in default as to the creditor attempting to exercise its co-debtor guaranty; or 4) the co-debtor voluntarily waives such protection in writing to any creditor (whichever occurs first). This extension of the automatic stay shall not act as a discharge of any indebtedness still owed by a co-debtor upon the expiration of any of the four (4) termination provisions above. In furtherance of the above, the Plan is confirmed pursuant to the cramdown provisions of 11 U.S.C. § 1191(b) with respect to the unsecured class 6, after confirmation of the Plan through the date of the discharge the following provisions apply :**

**1. The Debtor in this Plan shall provide quarterly reporting to the SubChapter V Trustee and all creditors through the filing of United States Trustee approved quarterly operating reports;**
**2. The SubChapter V Trustee and interested parties shall have the ability to object to the Debtor's calculation of disposable income as reflected in this plan through the filing of objections with the Court. In such a case, the Court will schedule a hearing as to whether the Debtor should modify the payment schedule to the unsecured creditors;**
**3. The Debtor will also supply its post confirmation tax returns to Quick Funding Group, LLC upon request;**
**5. For the 36 month term of the plan, John Romberg shall personally make a yearly contribution of $2,000 towards the unsecured claims in this case, for a total of $6,000 over the life of the plan. The additional distributions will be reflected in the confirmation order as a portion of the unsecured payment schedule in this case;**
**6. This Plan tolls and abates all statutes of limitations so that enjoined parties can seek relief from the co-debtor(s) after the Plan if claims remain.**

18.    The Court shall conduct a Post Confirmation Status Conference on **June 18, 2024**

**at 10:00am** at Bryan Simpson United States Courthouse, in Courtroom 4C, 300 North Hogan

Street, 4th Floor, Jacksonville, FL 32202.

###

Thomas C. Adam is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

*EXHIBIT A*
*To Confirmation Order*

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
www.flmb.uscourts.gov

In re:

HOLDINGS OF SOUTH FLORIDA,
INC.

                Debtor.

Case No.: 3:24-bk-00003-JAB

Chapter 11
*SubChapter V*

**FIRST AMENDED SUBCHAPTER V PLAN OF REORGANIZATION**
**FOR HOLDINGS OF SOUTH FLORIDA, INC DATED APRIL 1, 2024**

/s/ Thomas C. Adam
Thomas C. Adam, Esq.
Florida Bar No. 648711
ADAM LAW GROUP, P.A.
2258 Riverside Avenue
Jacksonville, FL 32204
(904) 329-7249 Phone
(904) 606-1245 Facsimile
tadam@adamlawgroup.com

*Counsel for Plan Proponent*

**Dated: April 1, 2024**

## SUB-CHAPTER V BACKGROUND

### A.  Description and History of the Debtor's Business

The Debtor is a Florida limited liability company engaged in the business of operation of a used car dealership in Duval County Florida d/b/a Auto Mac.  The Debtor has operated the dealership since 2003.

This Chapter 11 bankruptcy case has been filed for the purpose of restructuring their secured debt obligations as well as providing for payment of general unsecured creditors on a pro-rata basis on the effective date of the plan. The Debtor has filed 2 prior Chapter 11 Bankruptcy Cases, 3:14-bk-03145-JAF and 3:19-01219-JAF. Both prior Chapter 11 Cases resulted in confirmed plans of reorganizations.

### B.  Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter7 liquidation. The Debtor has a Liquidation Value of $0. *See, Liquidation Analysis attached hereto as Exhibit A*

### C.  Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $21,240 ($590/month). *See, Plan Proponent projected financial information as Exhibit B.*

The final Plan payment is expected to be paid on April 1, 2027.

## ARTICLE I
## SUMMARY

**Upon Confirmation of this Plan or any Amended Plan with substantially the same language and compliance with the provisions of Article 10.05 or 10.06 of this Plan below, the Automatic Stay of 11 U.S.C. § 362(a) shall extend to any co-debtor who personally guaranteed secured, unsecured or leased debt of the corporation until such time as one of the four following termination provisions occurs: 1) the Chapter 11 case is discharged or Dismissed; 2) the codebtor leaves the employment of the corporation; 3) the plan is in default**

**as to the creditor attempting to exercise it's co-debtor guaranty; or 4) the co-debtor voluntarily waives such protection in writing to any creditor (whichever occurs first).**

**This extension of the automatic stay shall not act as a discharge of any indebtedness still owed by a co-debtor upon the expiration of any of the four (4) termination provisions above.**

This Plan of Reorganization (the "Plan") is filed in accordance with Subchapter V of the Small Business Chapter 11 provisions of the United States Bankruptcy Code (the "Bankruptcy Code") by Holdings of South Florida, Inc.  (the "Debtor"), and proposes to restructure its business loans as discussed below and provide for payment to unsecured creditors of all disposable income during months 1-36 from future income of the Debtor derived from income generated through its retail automobile sales in order to obtain a discharge pursuant to 11 U.S.C. 1192. The Debtor is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

This Plan provides for one (1) class of priority claims; four (4) classes of secured claims; and one (1) class of general unsecured claims. Class six (6) unsecured creditors holding allowed claims will receive distribution under this Plan based on their pro rata share via monthly payments of the Debtor's disposable monthly income for 36 months beginning on the Effective Date of this Plan. This Plan also provides for the payment of administrative and priority claims either upon the effective date of the Plan, as agreed or as allowed under the Bankruptcy Code. All creditors should refer to Articles II through X of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one).**

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTEREST

**2.01   Class 1.** All allowed claims entitled to priority under Section 507 of the Bankruptcy Code (except administrative expense claims under Sections 507(a)(2)), and priority tax claims under Section 507(a)(8)).

**2.02   Class 2.** The secured claim of SDA, Inc. secured by property of the Debtor described as the vehicle inventory of the Debtor to the extent allowed as secured claim under Section 506 of the Bankruptcy Code.

**2.03   Class 3.** The secured claim of Open Lane secured by property of the Debtor described as the vehicle inventory of the Debtor to the extent allowed as a secured claim under Section 506 of the Bankruptcy Code.

3

**2.04**    **Class 4.**    The secured claim of US Auto Credit secured by property of the Debtor described as the vehicle inventory of the Debtor to the extent allowed as a secured claim under Section 506 of the Bankruptcy Code.

**2.05**    **Class 5.**    The secured claim of US Small Business Association secured by property of the Debtor described as all the tangible and intangible property of the Debtor to the extent allowed as a secured claim under Section 506 of the Bankruptcy Code.

**2.06**    **Class 6.**    All unsecured claims allowed under Section 502 of the Bankruptcy Code including any deficiency claims that may arise as a result of treatment of Classes 2-5 creditors.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS
## U.S. TRUSTEE FEES, AND PRIORITY TAX CLAIMS

3.01    <u>Unclassified Claims</u>.  Under Section 1123(a)(1), administrative expense claims and priority tax claims are not considered as a "class" under the Bankruptcy Code.

3.02    <u>Administrative Expense Claims</u>.  Each holder of an administrative expense claim allowed under Section 503 of the Bankruptcy Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03    <u>Priority Tax Claims</u>.  Each holder of a priority tax claim will be paid in regular monthly installments the total value of such claim as of the Petition Date, equal to the allowed amount of such claim over a period ending five years from the effective date of the Petition Date.

3.04    <u>Sub-Chapter V Trustee Fees</u>.  All fees and expenses required to be paid on or before the effective date of this Plan will be paid on the effective date per paragraph 3.02 above.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01    Claims and interest shall be treated as follows under this Plan:

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| Class 1 – Priority Claim of Florida Department of Revenue | Unimpaired | Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, upon the later of the effective date of this Plan as |

| | | |
|---|---|---|
| | | defined in Article VII, or the date on which such claim is allowed by a non-final appealable order, except tax claims that will be paid over sixty (60) months from the Petition Date at the statutory interest rate. |
| Class 2 - Secured Claim of SDA, Inc.<br><br>Account Number **** | Impaired | Class 2 is impaired by this Plan.<br><br>Class 2 is secured by personal property of the Debtor described as the vehicle fleet of the Debtor to the extent allowed as a secured claim under Section 506 of the Bankruptcy Code.<br><br>The Plan proposed to pay the Class 2 claim (in full) the total sum of $80,000.00. The holder of the Class 2 claim shall retain its lien on the above property and will receive cash payments equal to $80,000.00 payable at 5 % over twenty five (25) monthly payments of $3,376.22/month. |
| Class 3 – Secured Claim of Open Lane<br><br>Account Number **** | Impaired | Class 3 is impaired by this Plan.<br><br>Class 3 is secured by personal property of the Debtor described as the vehicle fleet of the Debtor to the extent allowed as a secured claim under Section 506 of the Bankruptcy Code.<br><br>The Plan proposed to pay the Class 3 claim (in full) the total sum of $8,220.00. The holder of the Class 3 claim shall retain its lien on the above property and will receive a lump sum payment equal to $8,220 payable on or before the Effective Date of the Plan. |

| Class 4 – Secured Claim of US Auto Credit<br><br>Account Number **** | Impaired | Class 4 is impaired by this Plan.<br><br>Class 4 is secured by personal property of the Debtor described as the vehicle fleet of the Debtor to the extent allowed as a secured claim under Section 506 of the Bankruptcy Code.<br><br>The Plan proposed to pay the Class 4 claim (in full) the total sum of $50,000.00. The holder of the Class 3 claim shall retain its lien on the above property and will receive cash payments equal to $50,000 payable at 5 % over twelve (12) monthly payments of $4,280.37/month. |
| --- | --- | --- |
| Class 5 – Secured Claim of US Small Business Association<br><br>Account Number **** | Impaired | Class 5 is impaired by this Plan.<br><br>Class 5 is secured by personal property of the Debtor described as all tangible and intangible property of the Debtor to the extent allowed as a secured claim under Section 506 of the Bankruptcy Code.<br><br>The Plan values the Class 5 Collateral at 102,333.33.<br>The Plan proposed to pay the Class 5 claim the total principal sum of $102,333.33. The holder of the Class 5 claim shall retain its lien on the above property and will receive cash payments equal to $102,333.33 payable at 4.5 % over one hundred and eighty (180) monthly payments of $782.84/month. |

| Class 6 – General Unsecured Creditors | Impaired | Class 6 is impaired by this Plan. |
|---|---|---|
| | | To the extent that unsecured claims are filed and allowed, the Debtor shall pay the total amount of $21,240.00 to unsecured claims at the rate of $590.00/month during months 1-36 of the plan. Each allowed unsecured claim will received its prorate share of this payment for approximately 4% repayment of all unsecured claims. |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01   <u>Disputed Claim</u>.   A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: i) a proof of claim has been filed or deemed filed, and the Debtor or another party has filed an objection; or ii) no proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent or un-liquidated.

5.02   <u>Delay of Distribution on a Disputed Claim</u>.   No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03   <u>Settlement of Disputed Claims</u>.   The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01   <u>Assumed Executory Contracts and Unexpired Leases.</u>

(a)   The Debtors assume the following executory contracts and/or unexpired leases effective upon the effective date of this Plan as provided in Article VII:

*Business Lease with H & J Waters, LLC relating to the property at 552 Cassat Avenue, Jacksonville, FL 32254*

7

(b)     The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01 of this Plan or before the date of the order confirming this Plan.  **A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.**

**ARTICLE VII**
**MEANS FOR IMPLEMENTAION OF THIS PLAN**

7.01     <u>Property of the Estate; Release of Liens.</u> Except as otherwise expressly provided in the Plan or in the order confirming the Plan, (i) The Debtor will retain all property of the estate and confirmation of the Plan vests all property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan shall be free and clear of any and all liens, claims, and interests of any creditors.

7.02     <u>Duty to Correctly Credit Payments/Debtors Payments Considered Made Under the Plan.</u>  Confirmation of this Plan shall impose an affirmative duty on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust to recalibrate any accounting system designed to account for distributions made under this Plan to the value of each claim as provided under this Plan and to apply the direct post-petition monthly payments paid on account of the Debtor to the month in which each payment was paid, whether or not such payments are immediately applied by the creditor to the outstanding loan balance or are placed into some type of suspense, forbearance or similar account.  All payments made to any creditors on account of the Debtor after confirmation of this Plan shall be considered made under this Plan regardless of whether this case is substantially consummated, a final decree is entered, and closed.

7.03     <u>Business Operations & Disbursing Agent.</u> The Plan contemplates that the Debtor will continue to manage and operate its business with low operating expenses. The Debtor believes the cash flow generated from operations will be sufficient to make all Plan Payments and maintain existing operations, as established by the Projections. The Debtor will be the Disbursing Agent and will make all required payments under the Plan whether the Plan is confirmed under 11 U.S.C. § 1191(b) or 1191(a).

7.04     <u>Funds Generated During Chapter 11</u>. Funds generated from operations through the Effective Date will be used for Plan Payments; however, the Debtor's cash on hand as of Confirmation will be available for payment of Administrative Expenses.

7.05     <u>Management and Control of Reorganized Debtor.</u> The operations of the Reorganized Debtor shall continue to be overseen by the Debtor's current Shareholder and President, John Romberg.  The powers of Mr. Romberg shall be substantially the same as the Mr. Romberg's powers as of the Petition Date.

7.06     <u>Quarterly Reporting</u>. In the event the Plan is confirmed under 11 U.S.C. § 1191(b), the Debtor will continue to file quarterly operating reports until such time as the Debtor has made all payments under the Plan or receives a discharge.

7.07.    <u>Trustee Applications for Compensation</u>. The SubChapter V Trustee may file applications for compensation as needed in the event the Plan is confirmed under 11 U.S.C. § 1191(b).

**ARTICLE VIII**
**<u>GENERAL PROVISIONS</u>**

8.01    <u>Definitions and Rules of Construction</u>. The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan and as are generally understood.

8.02    <u>Effective Date</u>.  The Debtor will continue to operate as Debtor-in-possession during the period from the date the order confirming this Plan is entered (the "Confirmation Date") through and until the effective date, which will be fourteen (14) days after the Confirmation Date (the "Effective Date").

8.03    <u>Severability</u>. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04    <u>Binding Effect</u>. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05    <u>Captions</u>. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06    <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07    <u>Corporate Governance</u>. As required by § 1123(a)(6) of the Code, John Romberg shall remain as President of the Debtor after confirmation of this Plan and 100% shareholder. The Debtor shall not issue any further non-voting equity securities.

**ARTICLE IX**
**<u>DISCHARGE</u>**

**9.01.    <u>Discharge</u>. If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:**
**(i) imposed by this Plan; or**

9

**(ii) to the extent provided in § 1141(d)(6).**

**If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:**
**(i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or**
**(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.**

## ARTICLE X
## OTHER PROVISIONS

10.01  <u>Payments</u>.  Payments to the various Classes under this Plan shall commence twenty (20) days after the Effective Date of the Plan unless otherwise specifically stated in the Confirmation Order.

10.02  <u>Payments for Property Taxes and Property Insurance</u>.  Unless otherwise provided for by this Plan or any order confirming this Plan, the Plan Proponents shall pay all property taxes and property insurance directly to the relevant taxing authorities and insurance providers.  Any and all agreements for the establishment of escrow accounts are deemed rejected by this Plan, unless specifically assumed.  Confirmation of this Plan shall impose an affirmative duty on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust (hereinafter referred collectively as the "Secured Classes" and individually as the "Secured Class") to cancel any and all escrow accounts that are deemed rejected by this Plan.  The Secured Classes must assert and claim repayment for any escrow advances paid on account of property taxes or property insurance prior to the entry of any order confirming this Plan, or payment by the Plan Proponents for any escrow advances shall be deemed waived.

10.03  <u>Default Provisions</u>.  The due date of any deferred cash payment required under the Plan as to the Secured Classes shall be the first (1st) day of each month beginning on the month immediately following the effective date of the Plan (the "Payment Due Date").  There shall be a fifteen (15) day grace period for any deferred cash payment required by the Plan without penalty, fee or other charge (the "Grace Period").  Collectively, the Payment Due Date and the Grace Period are referred to herein as the Permissible Payment Period.  In the event that any deferred cash payment required by the Plan is not made within the Permissible Payment Period, the Debtor shall be in default under this Plan as to the relevant secured claim ("Default").  Prior to enforcing the lien encumbering the collateral, the holder of the secured claim shall give written notice directly to the Debtor.

The notice shall specify: (a) the Default; (b) the action required to cure the Default; (c) a date, not less than 30 days from the date the notice is given to the Debtor, by which the Default must be cured; and (d) that failure to cure the Default on or before the date specified in the notice

10

may result in foreclosure of the lien encumbering the collateral.

If the Default is not cured on or before the date specified in the notice, the holder of the secured claim may, at its option, require immediate payment in full of all sums secured by the collateral, as determined by any order confirming the Plan, without further demand and may foreclose upon its lien by judicial proceeding.

10.04   Partial Pre-Payment Provisions.  The Debtor shall be entitled to pay any portion (or all) of the principal outstanding with regard to the secured claims, as determined by the Confirmed Plan, at any time without penalty.  Pre-payment of any principal as to the secured claims shall not affect the payment due on any given Due Date or the payment schedule, except that any principal pre-paid shall be deducted from the last principal portion of the payment due under the payment schedule, with the interest portion deemed satisfied (the "Partial Pre-Payment").  In the event that the collateral is sold or the balance outstanding on any given date is paid by refinance or otherwise, the principal outstanding to be satisfied as to the secured claim shall include the amount outstanding as to the secured claim as valued by this Plan after application of all payments made pursuant to the Plan.

**ARTICLE XI**
**PLAN INJUNCTION TO EXTEND AUTOMATIC STAY**

11.01   Plan Injunction to Extend of Automatic Stay. Upon Confirmation of this Plan or any Amended Plan with substantially the same language and compliance with the provisions  of this Plan stated below, the Automatic Stay of 11 U.S.C. § 362(a) shall extend to any co-debtor who personally guaranteed secured, unsecured or leased debt of the corporation until such time as one of the four following termination provisions occurs: 1) the Chapter 11 case is discharged or dismissed; 2) the co-debtor leaves the employment of the corporation; 3) the plan is in default as to the creditor attempting to exercise it's co-debtor guaranty; or 4) the co-debtor voluntarily waives such protection in writing to any creditor (whichever occurs first). This extension of the automatic stay shall not act as a discharge of any indebtedness still owed by a co-debtor upon the expiration of any of the four (4) termination provisions above.

In furtherance of the above, if the Plan is confirmed pursuant to the cramdown provisions of 11 U.S.C. § 1191(b) with respect to the unsecured class 5,  after confirmation of the Plan through the date of the discharge the following provisions apply :
1. The Debtor in this Plan shall provide quarterly reporting to the SubChapter V Trustee and all creditors through the filing of United States Trustee approved quarterly operating reports;
2. The SubChapter V Trustee and interested parties shall have the ability to object to the Debtor's calculation of disposable income as reflected in this plan through the filing of objections with the Court. In such a case, the Court will schedule a hearing as to whether the Debtor should modify the payment schedule to the unsecured creditors;
3. The Debtor will also supply its post confirmation tax returns to any member of Class 6 who so requests;

4. The officer compensation to John Romberg for his post-confirmation work compensation shall not exceed the amount of salary requested and/or awarded by the Court at Confirmation;

5. For the 36-month term of the plan, John Romberg shall personally make a yearly contribution of $1,000 towards the unsecured claims in this case, for a total of $3,000 over the life of the plan. The additional distributions will be reflected in the confirmation order as a portion of the unsecured payment schedule in this case;

6. This Plan tolls and abates all statutes of limitations so that enjoined parties can seek relief from the co-debtor(s) after the Plan if claims remain.

11.03 <u>Parties Benefiting from Plan Injunction</u>: The sole co-debtor party intending to receive benefit from this Plan Injunction is the Debtor's President and Shareholder John Romberg.

11.04 <u>Parties Enjoined by the Plan Injunction</u>: The parties intending to be enjoined by this Plan Injunction, the basis and amounts of the debts, and the source for co-debtor liability are as follows:

**Wynwood Capital** ($43,700) - merchant cash advance lender who entered into agreement with the Debtor to advance monies in return for a purported purchase of the Debtor's future receivables. As part of the agreement, John Romberg executed a personal guaranty.

**Mynt Advance** ($55,000) - merchant cash advance lender who entered into agreement with the Debtor to advance monies in return for a purported purchase of the Debtor's future receivables. As part of the agreement, John Romberg executed a personal guaranty.

**Quick Funding Group** ($78,000) - merchant cash advance lender who entered into agreement with the Debtor to advance monies in return for a purported purchase of the Debtor's future receivables. As part of the agreement, John Romberg executed a personal guaranty.

**Rowan Advance, LLC** ($69,000) - merchant cash advance lender who entered into agreement with the Debtor to advance monies in return for a purported purchase of the Debtor's future receivables. As part of the agreement, John Romberg executed a personal guaranty.

**Spartan Capital, LLC** ($43,000) - merchant cash advance lender who entered into agreement with the Debtor to advance monies in return for a purported purchase of the Debtor's future receivables. As part of the agreement, John Romberg executed a personal guaranty.

**US Auto Credit** ($50,000) - business lender who entered into an agreement to loan monies to the Debtor. As part of the agreement, John Romberg executed a personal guaranty.

**SDA, Inc.** ($80,000) - business lender who entered into an agreement to loan monies to the Debtor. As part of the agreement, John Romberg executed a personal guaranty.

12

**Open Lane** ($10,000) - business lender who entered into an agreement to loan monies to the Debtor. As part of the agreement, John Romberg executed a personal guaranty.

**US. Small Business Association** ($507,912) - business lender who entered into an agreement to loan monies to the Debtor. As part of the agreement, John Romberg executed a personal guaranty.

**American Express** ($6,000)– business credit cards personally guaranteed by John Romberg.

**Truist Bank** ($20,000)– business credit cards personally guaranteed by John Romberg.

**Wells Fargo** ($23,000)– business credit cards personally guaranteed by John Romberg.

**Bill.com** ($49,000)– business credit line personally guaranteed by John Romberg.

11.05 <u>Factual Basis for Plan Injunction</u>: The Debtor's estate will suffer irreparable harm unless collection activities against Mr. Romberg are stayed during the pendency of the repayment period prescribed by the Plan. The Debtor believes that John Romberg is critical to its reorganization efforts. He will be devoting his time (at least 40+ hours most weeks), industry knowledge and expertise to revitalizing the Debtor during the term of the plan. Protracted litigation resulting in judgments, garnishments, charging liens or other collection activity against John Romberg will have a detrimental effect on the ability of the Debtor to reorganize and repay creditors. Additionally, if creditors are able to obtain personal judgments against John Romberg, then his 100% equity ownership in the Debtor would be in jeopardy which could result in disruption to Debtor's business operations. In the event John Romberg's ownership interest is seized, the Debtor would not be able to operate or generate revenues to fund the Plan.

11.06 <u>Legal Basis for Plan Injunction</u>: The Court has authority to grant this Plan Injunction. Factors Court's will examine to determine the are similar to those for a bar order and include: (1) there is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate; (2) the non-debtor has contributed substantial assets to the reorganization; (3) the injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor; (4) the impacted class, or classes, has overwhelmingly voted to accept the plan; (5) the plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction; and (6) the plan provides an opportunity for those claimants who choose not to settle to recover in full. *In re Dow Corning Corp*., 280 F.3d at 658. The list is nonexclusive and flexibly applied. *In re Seaside Eng'g & Surveying, Inc*., 780 F.3d at 1079.

Bankruptcy Courts in the Middle District of Florida have approved Plan Injunctions in Chapter 11 Bankruptcy Cases in cases involving similar fact patters. *See, In re Global Travel International, Inc.*, Case No. 6:22-bk-00438-TPG (Bankr. M.D. Fla. Sept 30, 2022) and *Central Florida Civil, LLC*, Case No. 3:22-bk-01736-BAJ (Bankr. M.D. Fla. Mar. 3, 2023).

Respectfully submitted on April 1, 2024

/s/ Thomas C. Adam
Thomas C. Adam, Esq.
Florida Bar No. 648711
ADAM LAW GROUP, P.A.
2258 Riverside Avenue
Jacksonville, FL 32204
(904) 329-7249 telephone
(904) 606-1245 facsimile
tadam@adamlawgroup.com

*Counsel to Plan Proponent*

# Exhibit
# A

| | Address/Description | Market Value | Lien Amount Applied tp Asset | Lienholder | Exemptions | Value to Liquidation |
|---|---|---|---|---|---|---|
| **Real Estate** | | | | | | |
| | n/a | | | | $0.00 | $0.00 |
| **Personal Property** | | | | | | |
| | Office, Desks, Files | $3,000.00 | $3,000.00 | US SBA | $0.00 | $0.00 |
| | Automobile Inventory | $205,249.00 | $205,249.00 | Open Lane, U.S. Auto Credit, SDA | $0.00 | $0.00 |
| | | | | | | |
| **Cash/Checking** | | | | | | |
| | Wells Fargo 9692 | $10,882.88 | $10,882.88 | US SBA | $0.00 | $0.00 |
| | PNC Bank 6299 | $12,651.66 | $12,651.66 | US SBA | $0.00 | $0.00 |
| | Truist Bank | $300.00 | $300.00 | US SBA | $0.00 | |
| | | | | | | |
| **Other Assets** | | | | | | |
| | Deposit - JEA | $890.00 | $890.00 | | $0.00 | $0.00 |
| | Accounts Receivable | $173,648.00 | $173,648.00 | Open Lane, U.S. Auto Credit, SDA, U.S. SBA | $0.00 | $0.00 |
| | | | | | | - |
| | | | | | Asset Value | $0.00 |
| **Secured Party** | **Total Secured Value** | | | | Liquidation Costs | $0.00 |
| Open Lane | $32,386.00 | | | | Trustee Fees | $0.00 |
| SDA | $186,954.21 | | | | | |
| U.S. Auto Credit | $75,387.00 | | | | **Liquidation Value** | $0.00 |
| US SBA | $507,912.00 | | | | | |
| **Total Liens** | **$802,639.21** | | | | | |

# Exhibit
# B

**PLAN 3 YEAR CASH FLOW PROJECTIONS**

| 2024 | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|
| **REVENUE** | | | | | | | | | |
| Gross Revenue | $85,000.00 | $85,000.00 | $85,000.00 | $85,000.00 | $85,000.00 | $85,000.00 | $85,000.00 | $85,000.00 | $85,000.00 |
| Cost of Goods Sold | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 |
| *Net Revenue* | **$35,000.00** | **$35,000.00** | **$35,000.00** | **$35,000.00** | **$35,000.00** | **$35,000.00** | **$35,000.00** | **$35,000.00** | **$35,000.00** |
| | | | | | | | | | |
| **EXPENSES** | | | | | | | | | |
| Advertising | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 |
| Payroll Wages & Taxes | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 |
| Taxes & Licenses | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 |
| Repair & Maintenance | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 |
| Merchant Processing | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 |
| Detailing | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 |
| Supplies/Software | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 |
| Insurance | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 |
| Rent | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 |
| Telephone & Utilities | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 |
| SubChapter V Trustee Fees | $1,000.00 | $1,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Title Costs | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| Towing & Transporation | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 |
| Pest Control | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 |
| Computer, IT, Internet | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| Credit Reports | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 |
| | | | | | | | | | |
| **Total Operating Expenses** | **$24,630.00** | **$23,630.00** | **$23,630.00** | **$23,630.00** | **$23,630.00** | **$23,630.00** | **$23,630.00** | **$23,630.00** | **$23,630.00** |
| | | | | | | | | | |
| **PLAN PAYMENTS** | | | | | | | | | |
| Class 1 Priority - FDOR | $0.00 | $1,484.40 | $1,484.40 | $1,484.40 | $1,484.40 | $1,484.40 | $1,484.40 | $1,484.40 | $1,484.40 |
| Class 2 SDA, Inc. | $0.00 | $3,376.22 | $3,376.22 | $3,376.22 | $3,376.22 | $3,376.22 | $3,376.22 | $3,376.22 | $3,376.22 |
| Class 3 Open Lane | $0.00 | $856.07 | $856.07 | $856.07 | $856.07 | $856.07 | $856.07 | $856.07 | $856.07 |
| Class 4 US Auto | $0.00 | $4,280.37 | $4,280.37 | $4,280.37 | $4,280.37 | $4,280.37 | $4,280.37 | $4,280.37 | $4,280.37 |
| Class 5 US SBA | $0.00 | $782.84 | $782.84 | $782.84 | $782.84 | $782.84 | $782.84 | $782.84 | $782.84 |
| | | | | | | | | | |
| **Total Plan Payments** | **$0.00** | **$10,779.90** | **$10,779.90** | **$10,779.90** | **$10,779.90** | **$10,779.90** | **$10,779.90** | **$10,779.90** | **$10,779.90** |
| | | | | | | | | | |
| **NET CASH FLOW** | **$10,370.00** | **$590.10** | **$590.10** | **$590.10** | **$590.10** | **$590.10** | **$590.10** | **$590.10** | **$590.10** |

| 2025 | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUE** | | | | | | | | | | | | |
| Gross Revenue | $88,000.00 | $88,000.00 | $88,000.00 | $88,000.00 | $88,000.00 | $88,000.00 | $88,000.00 | $88,000.00 | $88,000.00 | $88,000.00 | $88,000.00 | $88,000.00 |
| Cost of Goods Sold | $52,500.00 | $52,500.00 | $52,500.00 | $52,500.00 | $57,600.00 | $57,600.00 | $57,600.00 | $57,600.00 | $57,600.00 | $57,600.00 | $57,600.00 | $57,600.00 |
| *Net Revenue* | **$35,500.00** | **$35,500.00** | **$35,500.00** | **$35,500.00** | **$30,400.00** | **$30,400.00** | **$30,400.00** | **$30,400.00** | **$30,400.00** | **$30,400.00** | **$30,400.00** | **$30,400.00** |
| | | | | | | | | | | | | |
| **EXPENSES** | | | | | | | | | | | | |
| Advertising | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 |
| Payroll Wages & Taxes | $5,300.00 | $5,300.00 | $5,300.00 | $5,300.00 | $5,300.00 | $5,300.00 | $5,300.00 | $5,300.00 | $5,300.00 | $5,300.00 | $5,300.00 | $5,300.00 |
| Taxes & Licenses | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 |
| Repair & Maintenance | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 |
| Merchant Processing | $520.00 | $520.00 | $520.00 | $520.00 | $520.00 | $520.00 | $520.00 | $520.00 | $520.00 | $520.00 | $520.00 | $520.00 |
| Detailing | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 |
| Supplies/Software | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 |
| Insurance | $3,100.00 | $3,100.00 | $3,100.00 | $3,100.00 | $3,100.00 | $3,100.00 | $3,100.00 | $3,100.00 | $3,100.00 | $3,100.00 | $3,100.00 | $3,100.00 |
| Rent | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 |
| Telephone & Utilities | $1,300.00 | $1,300.00 | $1,300.00 | $1,300.00 | $1,300.00 | $1,300.00 | $1,300.00 | $1,300.00 | $1,300.00 | $1,300.00 | $1,300.00 | $1,300.00 |
| SubChapter V Trustee Fees | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Title Costs | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| Towing & Transporation | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 |
| Pest Control | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 |
| Computer, IT, Internet | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| Credit Reports | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 |
| | | | | | | | | | | | | |
| **Total Operating Expenses** | **$24,150.00** | **$24,150.00** | **$24,150.00** | **$24,150.00** | **$24,150.00** | **$24,150.00** | **$24,150.00** | **$24,150.00** | **$24,150.00** | **$24,150.00** | **$24,150.00** | **$24,150.00** |
| | | | | | | | | | | | | |
| **PLAN PAYMENTS** | | | | | | | | | | | | |
| Class 1 Priority - FDOR | $1,484.40 | $1,484.40 | $1,484.40 | $1,484.40 | $1,484.40 | $1,484.40 | $1,484.40 | $1,484.40 | $1,484.40 | $1,484.40 | $1,484.40 | $1,484.40 |
| Class 2 SDA, Inc. | $3,376.22 | $3,376.22 | $3,376.22 | $3,376.22 | $3,376.22 | $3,376.22 | $3,376.22 | $3,376.22 | $3,376.22 | $3,376.22 | $3,376.22 | $3,376.22 |
| Class 3 Open Lane | $856.07 | $856.07 | $856.07 | $856.07 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Class 4 US Auto | $4,280.37 | $4,280.37 | $4,280.37 | $4,280.37 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Class 5 US SBA | $782.84 | $782.84 | $782.84 | $782.84 | $782.84 | $782.84 | $782.84 | $782.84 | $782.84 | $782.84 | $782.84 | $782.84 |
| | | | | | | | | | | | | |
| **Total Plan Payments** | **$10,779.90** | **$10,779.90** | **$10,779.90** | **$10,779.90** | **$5,643.46** | **$5,643.46** | **$5,643.46** | **$5,643.46** | **$5,643.46** | **$5,643.46** | **$5,643.46** | **$5,643.46** |
| | | | | | | | | | | | | |
| **NET CASH FLOW** | **$570.10** | **$570.10** | **$570.10** | **$570.10** | **$606.54** | **$606.54** | **$606.54** | **$606.54** | **$606.54** | **$606.54** | **$606.54** | **$606.54** |

| 2026 | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUE** | | | | | | | | | | | | |
| Gross Revenue | $90,000.00 | $90,000.00 | $90,000.00 | $90,000.00 | $90,000.00 | $90,000.00 | $90,000.00 | $90,000.00 | $90,000.00 | $90,000.00 | $90,000.00 | $90,000.00 |
| Cost of Goods Sold | $59,000.00 | $59,000.00 | $59,000.00 | $59,000.00 | $59,000.00 | $62,375.00 | $62,375.00 | $62,375.00 | $62,375.00 | $62,375.00 | $62,375.00 | $62,375.00 |
| *Net Revenue* | **$31,000.00** | **$31,000.00** | **$31,000.00** | **$31,000.00** | **$31,000.00** | **$27,625.00** | **$27,625.00** | **$27,625.00** | **$27,625.00** | **$27,625.00** | **$27,625.00** | **$27,625.00** |
| | | | | | | | | | | | | |
| **EXPENSES** | | | | | | | | | | | | |
| Advertising | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 |
| Payroll Wages & Taxes | $5,700.00 | $5,700.00 | $5,700.00 | $5,700.00 | $5,700.00 | $5,700.00 | $5,700.00 | $5,700.00 | $5,700.00 | $5,700.00 | $5,700.00 | $5,700.00 |
| Taxes & Licenses | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 |
| Repair & Maintenance | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 |
| Merchant Processing | $520.00 | $520.00 | $520.00 | $520.00 | $520.00 | $520.00 | $520.00 | $520.00 | $520.00 | $520.00 | $520.00 | $520.00 |
| Detailing | $3,050.00 | $3,050.00 | $3,050.00 | $3,050.00 | $3,050.00 | $3,050.00 | $3,050.00 | $3,050.00 | $3,050.00 | $3,050.00 | $3,050.00 | $3,050.00 |
| Supplies/Software | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 |
| Insurance | $3,150.00 | $3,150.00 | $3,150.00 | $3,150.00 | $3,150.00 | $3,150.00 | $3,150.00 | $3,150.00 | $3,150.00 | $3,150.00 | $3,150.00 | $3,150.00 |
| Rent | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 |
| Telephone & Utilities | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 |
| SubChapter V Trustee Fees | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Title Costs | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| *Towing & Transporation* | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 |
| *Pest Control* | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 |
| *Computer, IT, Internet* | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| *Credit Reports* | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 |
| | | | | | | | | | | | |
| **Total Operating Expenses** | **$24,750.00** | **$24,750.00** | **$24,750.00** | **$24,750.00** | **$24,750.00** | **$24,750.00** | **$24,750.00** | **$24,750.00** | **$24,750.00** | **$24,750.00** | **$24,750.00** |
| | | | | | | | | | | | |
| **PLAN PAYMENTS** | | | | | | | | | | | |
| *Class 1 Priority - FDOR* | $1,484.40 | $1,484.40 | $1,484.40 | $1,484.40 | $1,484.40 | $1,484.40 | $1,484.40 | $1,484.40 | $1,484.40 | $1,484.40 | $1,484.40 |
| *Class 2 SDA, Inc.* | $3,376.22 | $3,376.22 | $3,376.22 | $3,376.22 | $3,376.22 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| *Class 3 Open Lane* | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| *Class 4 US Auto* | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| *Class 5 US SBA* | $782.84 | $782.84 | $782.84 | $782.84 | $782.84 | $782.84 | $782.84 | $782.84 | $782.84 | $782.84 | $782.84 |
| | | | | | | | | | | | |
| **Total Plan Payments** | **$5,643.46** | **$5,643.46** | **$5,643.46** | **$5,643.46** | **$5,643.46** | **$2,267.24** | **$2,267.24** | **$2,267.24** | **$2,267.24** | **$2,267.24** | **$2,267.24** |
| | | | | | | | | | | | |
| **NET CASH FLOW** | **$606.54** | **$606.54** | **$606.54** | **$606.54** | **$606.54** | **$607.76** | **$607.76** | **$607.76** | **$607.76** | **$607.76** | **$607.76** |

*EXHIBIT B*
*To Confirmation Order*

**Pro Rata Distribution**

| Creditor | Address | Account # | Amount of Claim | Pro Rata Share | Total Distribution From Class 5 | Monthly Distribution From Class 5 |
|---|---|---|---|---|---|---|
| **Florida Department of Revenue** | P.O. Box 8045 Tallahassee, FL 32314 | 8113 | $3,230.16 | 0.51% | $109.18 | $3.03 |
| **American Express** | Becket and Lee LLP PO Box 3001 Malvern PA 19355-0701 | 5016 | $7,974.65 | 1.27% | $269.53 | $7.49 |
| **Internal Revenue Service** | P.O. Box 7346 Philadelphia, PA 19101 | 8113 | $4,303.09 | 0.68% | $145.44 | $4.04 |
| **Bill** | 6220 America Center Dr. Suite 100 San Jose CA 95002 | 4047 | $49,583.82 | 7.89% | $1,675.87 | $46.55 |
| **SBA Inc.** | 2060 Mt. Paran Rd. NW #101 Atlanta, GA 30327 | N/A | $186,954.21 | 29.75% | $6,318.80 | $175.52 |
| **Truist Bank** | P.O. Box 85092 Richmond, VA 23286 | 2399 | $19,993.34 | 3.18% | $675.75 | $18.77 |
| **Wynwood Capital Group, LLC** | 20200 W Dixie Hwy Ste. 608 Miami, FL 33180 | N/A | $52,465.00 | 8.35% | $1,773.25 | $49.26 |
| **Advance Auto Parts** | 5008 Airport Rd. NW Roanoke, VA 24012 | N/A | $2,817.00 | 0.45% | $95.21 | $2.64 |
| **James & Harris CPA** | 857 S. Edgewood Ave Jacksonville, FL 32205 | N/A | $8,025.00 | 1.28% | $271.23 | $7.53 |
| **Marcus by Goldman Sachs** | P.O. Box 70321 Philadelphia, PA 19176 | 274 | $20,000.00 | 3.18% | $675.97 | $18.78 |
| **Mynt Advance** | 633 167th Street Ste 804 Miami, FL 33162 | N/A | $55,000.00 | 8.75% | $1,858.93 | $51.64 |
| **O-Reiilly Auto Parts** | P.O. Box 9464 Springfield, MO 65801 | N/A | $5,081.00 | 0.81% | $171.73 | $4.77 |
| **Quick Funding Group** | 157th Church Street Ste 1971 New Haven, CT 0510 | N/A | $78,000.00 | 12.41% | $2,636.30 | $73.23 |
| **Rowan Advance LLC** | 69 Marshall Drive Edison, NJ 08817 | N/A | $69,000.00 | 10.98% | $2,332.11 | $64.78 |
| **Spartan Capital** | 371 E. Main Street Ste. 2 Middletown, NY 10940 | N/A | $43,000.00 | 6.84% | $1,453.34 | $40.37 |
| **Wells Fargo** | P.O. Box 51193 Los Angeles, CA 90051 | 139 | $23,000.00 | 3.66% | $777.37 | $21.59 |
| **Total** | | | $628,427.27 | 100.00% | $21,240.00 | $590.00 |